**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1990
_____

DIEGO ARMANDO PINTADO-YUNGA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097 445 049)
Immigration Judge:  Honorable Alberto Riefkohl
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 23, 2016
Before:  GREENAWAY, JR. GREENBERG and ROTH, Circuit Judges

(Opinion filed: January 3, 2017)
_____

OPINION*
_____

PER CURIAM

Diego Armando Pintado-Yunga, proceeding pro se, petitions for review of a

decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Immigration Judge's decision denying his application for relief from removal. For the reasons that follow, we will deny the petition for review.

Pintado-Yunga, a native and citizen of Ecuador, entered the United States without inspection in 2000 or 2001. He was later convicted of crimes in New Jersey state court. An Immigration Judge ordered his removal from the United States because he was present without having been admitted or paroled. Pintado-Yunga was removed to Ecuador in 2005, but he re-entered the country without inspection in 2008. In 2014, his removal order was reinstated. Pintado-Yunga expressed a fear of harm and his case was referred to an Immigration Judge. Pintado-Yunga, through counsel, applied for withholding of removal and relief under the Convention Against Torture ("CAT").

Pintado-Yunga testified at his hearing that after he was removed in 2005, a friend wanted him to traffic drugs for a gang named Los Convoys. Although his testimony is not detailed, Pintado-Yunga stated that he had many encounters with the gang from 2006 to 2008. When he refused to sell drugs, gang members threatened him and hit him and he needed medical treatment. Pintado-Yunga testified that he filed complaints with the police many times and identified the gang members, but the police took no action. In his written statement, Pintado-Yunga said that gang members and/or Colombian drug dealers stabbed him on three occasions in 2008, took his house, and threatened to kill him and his family if he did not join them or "disappear."

Pintado-Yunga also testified that he fears the police in Ecuador as a result of an incident in 2007. Pintado-Yunga gave a boy a ride at a friend's request, the police found

2

drugs in the boy's possession, and the police wanted to know who the drugs belonged to. Pintado-Yunga said he did not know. The police detained Pintado-Yunga for forty-five minutes. The police hit him with a stick and then put him in a tub of water and gave him electric shocks. They stopped because he was bleeding. He was then released.

The Immigration Judge ("IJ") denied CAT relief in a decision issued November 6, 2015.[1] The IJ acknowledged that Pintado-Yunga had suffered torture in the past, but ruled that he had not shown that the Ecuadoran government acquiesces to gang violence. The IJ explained that Pintado-Yunga had stated in his affidavit and to an asylum officer that the police had issued arrest warrants for the gang members whom he reported. The IJ also noted that Pintado-Yunga had been arrested for drug possession. The IJ recognized evidence of corruption, but stated that there is also evidence that the government is taking measures to stop it.

The IJ also concluded that Pintado-Yunga had not shown that he will more likely than not be subjected to torture by the police. The IJ explained that the police had tortured him over seven years ago and released him when they found that he had no information. The IJ found any fear of torture by the police to be speculative. The IJ also noted that an article that Pintado-Yunga had submitted on police reform contradicted his argument that he would be subjected to torture by police.

---

[1]The IJ initially issued a decision on May 29, 2015. On appeal, the BIA remanded the record to the IJ for further findings. In addition to denying CAT relief on remand, the IJ denied withholding of removal. Because this ruling is not at issue, we will not discuss it.

The BIA dismissed Pintado-Yunga's appeal. The BIA affirmed the IJ's determination that Pintado-Yunga did not establish that it is more likely than not that, if removed, he will be tortured by or with the consent or acquiescence of a public official or other person acting in an official capacity. Reiterating the reasons given by the IJ, the BIA agreed that the evidence did not show that it was more likely than not that public officials would acquiesce to torture by gangs, or that the Ecuadoran police would torture him upon his return. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We will uphold the BIA's decision if it is supported by "reasonable, substantial, and probative evidence in the record as a whole." Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 350 (3d Cir. 2006) (citation and internal quotations omitted). We will not reverse unless the record compels a contrary conclusion. Id.

An applicant for CAT relief must show that it is more likely than not that he would be tortured if removed. Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 310 (3d Cir. 2011). The applicant also must show that he will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. at 310-11 (quoting 8 C.F.R. § 1208.18(a)(1)).

Substantial evidence supports the BIA's determination that Pintado-Yunga did not show that it is more likely than not that he will be tortured by the police if removed. Although past torture is a relevant factor, see 8 C.F.R. § 1208.16(c)(3)(i), the BIA noted, and the record reflects, that Pintado-Yunga's torture by the police was tied to a specific

4

incident when the police found drugs in the bag of a child in his care. The BIA stated that Pintado-Yunga was released once police were satisfied that he did not know about the drugs or their source. The BIA concluded that it was unlikely that the police would still be interested in Pintado-Yunga. The record does not compel a contrary conclusion.[2]

We also conclude that substantial evidence supports the BIA's ruling that the evidence does not show that public officials in Ecuador would acquiesce to torture by gangs. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene and prevent such activity." Pieschacon-Villegas, 671 F.3d at 311 (quoting 8 C.F.R. § 1208.18(a)(7)). The BIA reasoned, and we agree, that Pintado-Yunga's own arrest for drug possession in 2007 cuts against his assertion that the police take no action against criminal gang drug traffickers. We also agree with the BIA that the background evidence of corruption in Ecuador does not reflect government acquiescence to torturous acts by gangs.[3]

---

[2]Although Pintado-Yunga does not raise this in his brief, he stated in his affidavit that police beat him when he was removed to Ecuador in 2005 because he could not pay their request for a bribe. This statement is insufficient to compel the conclusion that it is more likely than not that police will subject him to torture.

[3]We do not rely on the arrest warrants noted by the BIA and the IJ as we find it unclear from the record whether these warrants were issued in connection with harm Pintado-Yunga suffered after he was removed in 2005 as opposed to harm he suffered years earlier when he was a child.

Pintado-Yunga asserts in his brief that the 2013 United States Department of State Report shows that gangs and drug traffickers operate in Ecuador and that the government is aware of and willfully blind to their existence. He also notes that the Report reflects a high level of violence in Ecuador that is linked to the police. The 2013 Department of State Report Country Report on Human Rights Practices reflects that police use excessive force, commit isolated unlawful killings, and torture criminal suspects and prisoners, but it does not show that police acquiesce in gang violence. In addition, a Department of State Report on U.S. Relations with Ecuador reflects that the government is working to combat illicit drug trafficking. Pintado-Yunga has not shown that the record compels a conclusion contrary to that reached by the BIA.[4]

Accordingly, we will deny the petition for review.

---

[4]To the extent Pintado-Yunga argues in his brief that the IJ's adverse credibility finding is not supported by substantial evidence, the IJ made no such finding. To the extent he contends that the BIA's decision conflicts with the credibility determination, this contention lacks merit.